BERRY et al., Appellees,

v.

PAISLEY et al., Appellants.

[Cite as *Berry v. Paisley* (1990), 66 Ohio App.3d 77.]

Court of Appeals of Ohio,
Erie County.

No. E-89-9.

Decided Feb. 9, 1990.

*Barry W. Vermeeren,* for appellees.

*Daniel J. Brady,* for appellants.

*Per Curiam.*

This case involves a dispute among some of the boathouse owners from Bimini Drive, Sandusky, Ohio, regarding the enforcement of restrictive covenants relating to the prohibition of construction in certain circumstances. Specifically, this court is being asked to reverse the ruling of the Erie County Court of Common Pleas which compelled the appellants, Richard and Marjorie Paisley, to remove a bay window they had installed on the west wall of their boathouse on Bimini Drive and to forgo plans to install a storage area and deck on the west wall of their boathouse on Bimini Drive.

The parties submitted this case to the trial court for a final determination on the merits. The trial court considered the following documents: (1) the pleadings; (2) the depositions of Richard Paisley, John Yocum, and Pat Berry; (3) the trial briefs submitted by counsel; and (4) stipulations and agreed-upon statements of testimony. Before the trial court reached a decision, appellees filed a motion for findings of fact and conclusions of law. A journal entry was filed on November 21, 1988, but was later vacated by the court, acting on its own initiative. Both the findings of fact and conclusions of law and the journal entry were filed on January 19, 1989.

The basic facts of this case are as follows. Two men, Leonard Billman and Harvey Creighton, founded the Snug Harbor subdivision in 1949. Bimini Drive, where the boathouse in question is located, is part of the Snug Harbor subdivision. As lots were sold in the subdivision, the developers included in each title the same restrictions and covenants. The titles of all parties involved in this litigation contain those restrictions and covenants, which were designed to run with the land. The restrictions at issue in this case are the following:

"No structure shall be erected upon said lot until the plans and specifications therefor shall first have been approved, in writing, by the grantor, or its successors in interest, or by its agents. This restriction shall continue in effect until a structure shall have been erected upon each boathouse lot in said allotment and shall thereupon terminate as to all such lots.

"The owner of said lot shall have the right to use, in common with other littoral owners in said allotment, the lateral channel running north and south

through said allotment as a means of ingress and egress to and from the premises hereby conveyed to Sandusky Bay, but without the right to moor vessels or place any obstruction in said channel, or to operate or permit to be operated any vessel in said channel at a speed in excess of three miles per hour."

In addition, the titles of appellees and appellants contain a further restriction at issue in this case. The additional restriction states:

"No exterior alteration or addition to the present existing buildings located in said boathouse lot, nor any new structure not attached to said existing structure shall be made or erected until grantee has acquired the approval of a majority of the other owners of lots 86 and 87, or any parts thereof."

Appellants purchased a boathouse at 603 Bimini Drive, Sandusky, Ohio, in May 1986. At the time the boathouse was purchased by appellants, a straight line of the west walls of the boathouses on Bimini Drive was readily observable. No physical wall face of any other boathouse on the west side of Bimini Drive extended any further west into the ninety-foot channel abutting the boathouses than the west wall of appellants' boathouse. The same uniformity of line was not apparent on the east wall of the boathouses on Bimini Drive.

Appellants began renovating their newly purchased boathouse; replacing walls and ceilings. In the fall of 1986, appellants consulted with an architect, who drew up plans for additions to the boathouse. Included in the plans were a bay window and a storage area and deck which would be placed on the west wall of the boathouse and would extend at least eight feet over the channel abutting the boathouses. Appellants sought and received approval for their planned additions from: the United States Army Corps of Engineers; the United States Coast Guard; the Ohio Department of Natural Resources, Watercraft Division; and the city of Sandusky. Appellants did not ask for or obtain approval from: the Bimini Drive Association; any boathouse owner from Bimini Drive; Snug Harbor, Inc.; or any other owners or successors in interest.

When appellees observed the construction of a bay window on the west wall of appellants' boathouse, appellees immediately informed appellants' architect there were restrictions on construction in the titles of all the boathouse owners, and that the restrictions prohibited any encroachment on the channel. Unfortunately, the matter could not be settled informally by the neighbors, so appellees filed a complaint in the Erie County Court of Common Pleas to prohibit appellants from completing the planned bay window, storage area and deck on the west side of appellants' boathouse. The trial court considered all of the information already recounted above, plus the information that appellants had discovered three infractions, other than appellants' bay window, of

the straight-line construction of the west walls of the boathouses on Bimini Drive.

One infraction was two angle irons which project approximately three feet over the channel. The two angle irons were approximately fifteen to twenty feet above the channel and were part of an old pulley system used to pull up shed doors on a boathouse.

Another infraction was a T.V. antenna on the boathouse of one of the appellees. The T.V. antenna is about twenty feet above the water and extends approximately four or five feet over the channel.

The third infraction was a rain gutter and overhang on a boathouse. The rain gutter and overhang are approximately fifteen feet above the channel and extend one to two feet over the channel.

As previously discussed, the trial court ruled in appellees' favor. Appellants raise one assignment of error, which states:

"The court's decision was contrary to law and against the manifest weight of the evidence."

Appellants begin by referring this court to the general rule of law in Ohio which establishes that restrictions on the use of land are disfavored and should be strictly construed. *Loblaw, Inc. v. Warren Plaza, Inc.* (1955), 163 Ohio St. 581, 57 O.O. 10, 127 N.E.2d 754, paragraph two of the syllabus. However, as appellants acknowledge, restrictions can be placed on the use of land and can be enforceable.

■ One type of restriction on the use of land, a restriction requiring prior approval of building plans, is enforceable even absent specific guidelines to indicate criteria for approval if either actual or constructive notice of the restriction exists and (1) the restriction is used to enforce a "general plan or scheme" of development; or (2) some other restriction or guideline exists to act in conjunction with the prior approval restriction to give an overall limiting effect to the absolute discretion of those empowered with granting or denying general approval; or (3) the restriction itself contains some limit on the scope of approval. *Carranor Woods Property Owners' Assn. v. Driscoll* (1957), 106 Ohio App. 95, 101, 6 O.O.2d 361, 364, 153 N.E.2d 681, 685–686.

■ The initial focus of analysis in this case must therefore be whether appellants had adequate notice, either actual or constructive, that restrictions on building existed to promote a general plan or scheme of development. The evidence in the record of this case shows appellants had both actual and constructive notice. As previously pointed out in the recitation of the facts of this case, all property owners in Snug Harbor had the same restrictions in their titles requiring prior approval of building plans. Appellants' title had a

further restriction requiring the approval of neighboring property owners before building commenced. In addition to the written restrictions in their title, appellants had constructive notice of a general plan or scheme of development in Snug Harbor. The evidence in the record of this case verifies that the straight, uniform development of the west walls bordering the channel abutting the boathouses was readily observable. This court has previously ruled that readily observable pattern of development is adequate to provide constructive notice of building restrictions. *Bailey Dev. Corp. v. MacKinnon–Parker, Inc.* (1977), 60 Ohio App.2d 307, 313–314, 14 O.O.3d 277, 281–282, 397 N.E.2d 405, 409–410. Appellants did have notice of the restrictions.

The second requirement for an enforceable prior approval restriction, that the restriction exists to enforce a general plan or scheme of development, is also met in this case. Again, the readily observable uniform construction of the west walls of the boathouses is sufficient to establish a general plan or scheme of development. *Id.* at 313–314, 14 O.O.3d at 281–282, 397 N.E.2d at 409–410.

■ Appellants contend that the restrictions in this case are not enforceable because the restrictions have been abandoned and waived. Therefore, appellants assert, appellees are estopped from enforcing the restrictions now. As evidence of abandonment or waiver of the restrictions, appellants refer to the T.V. antenna, the two angle irons and the rain gutter, all of which are attached to other boathouses and all of which extend to some extent over the channel. We agree with the trial court that all of these infractions are de minimis. Because they are de minimis, these infractions do not constitute an abandonment or waiver of building restrictions prohibiting obstruction of the channel. See *McGuire v. Caskey* (1900), 62 Ohio St. 419, 427, 57 N.E. 53, 55.

■ Appellants also protest that the addition of more stories on some of the boathouses or changes on the east walls of some of the boathouses constitute abandonment or waiver of any restrictions. We disagree. The changes appellants refer to in no way affected the integrity of the restrictions designed to prohibit any obstruction of the ninety-foot channel.

■ Appellants' final argument to this court is that appellees cannot enforce the restrictions prohibiting the obstruction of the channel because there is nothing in the record to demonstrate that appellees own the channel. The manifest weight of the evidence before this court establishes that the waterways are common areas of the subdivision. The deed restrictions placed in the titles of all property owners in Snug Harbor are there to protect the integrity of the channels by prohibiting each property owner from obstructing

the channels.  Accordingly, appellees have standing to prohibit the obstruction of the channel.

Appellants' sole assignment of error is not well taken.  Because substantial justice has been done to appellants, the judgment of the Erie County Court of Common Pleas is affirmed.  Appellants are ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.